STATE, EX REL. WILLIAM H. WRIGHT, ATTORNEY GENERAL, RELATOR, v. LANCASTER COUNTY RURAL PUBLIC POWER DISTRICT ET AL., RESPONDENTS.

FILED APRIL 4, 1936. No. 29814.

*William H. Wright, Attorney General,* and *Lester A. Danielson,* for relator.

*C. A. Sorensen,* for respondents.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is an action in the nature of *quo warranto* to dissolve the organization or corporate existence of the Lancaster County Rural Public Power District. The action was brought originally in the supreme court by the state, on the relation of the attorney general, and is based on alleged failure to comply with the act of 1933, authorizing the creation of public light and power districts. Laws 1933, ch. 86; Comp. St. Supp. 1935, secs. 70-701 to 70-716.

By that act the legislature provided for the organization

and operation of light and power systems to furnish electrical energy to customers in organized districts. To this end provision was made for acquiring the rights and property essential to feasible electric light and power projects.

The territory included in the Lancaster County Rural Public Power District consists of the 35 voting precincts in Lancaster county outside of the city of Lincoln.

In an answer to the information of relator, the proceedings on which the organization or incorporation of the Lancaster County Rural Public Power District depends are stated in detail. There is no controversy over the material facts. The issues are to be determined on a motion by relator for judgment on the pleadings.

The organization or incorporation of the Lancaster County Rural Public Power District is first attacked by relator as fatally defective on the grounds that its territorial boundaries are included in the Eastern Nebraska Public Power District composed of the counties of Lancaster, Richardson, Pawnee, Nemaha, Johnson, Cass, Otoe, Sarpy, and Saunders; that both districts were in the course of organization at the same time; that territory in the two districts overlap, both planning to construct transmission lines in rural Lancaster county to furnish electrical energy in the same territory to the same persons; that, under the plans adopted by both districts, one would nullify, conflict with or materially affect the other in the exercise of corporate powers and duties, contrary to statute. These contentions of relator, though well presented, do not seem to be tenable when considered with the entire act and the organization records of the two districts. According to the statute, a public power district may be created by a petition containing the required data, by the filing thereof with the department of public works, or its successor, and by that department's certificate of approval after an investigation. Comp. St. Supp. 1935, sec. 70-703. The act provides:

"Upon receipt of such petition it shall be the duty of said department of public works at once to make an investiga-

tion of the proposed district and of its proposed plants, systems and irrigation. works and, if deemed by said department feasible and conforming to public convenience and welfare, the department, or its successor, by its secretary or executive head, shall thereupon and within 30 days from the receipt of such petition execute a certificate, in duplicate, setting forth a true copy of said petition and declaring that said petition has been approved." Comp. St. Supp. 1935, sec. 70-703.

The record shows compliance with statutory requirements, unless legal organization was defeated by the overlapping of districts in rural Lancaster county, or by delay in the issuance of the certificate of approval. A section providing that a public power district, when created in the manner prescribed by statute, "shall be a public corporation or political subdivision of the state" contains the following proviso:

"Provided nothing in this act shall be construed to prevent the organization of a district hereunder within, or partly within, the territorial boundaries of another district organized hereunder, so long as the plants, systems and works, the operation of the same, the exercise of powers and the assumption of duties and responsibilities hereunder, of or on the part of one such district, do not nullify, conflict with, or materially affect those of or on the part of another such district." Comp. St. Supp. 1935, sec. 70-702.

Overlapping is not forbidden except where there is a conflict in material respects mentioned in the proviso. For the purposes of organization, the duty to investigate and determine whether such a conflict exists was imposed on the department of public works, or its successor, the department of roads and irrigation with the state engineer as executive head. The department of roads and irrigation, by the state engineer, issued, in duplicate, after an investigation, a certificate of approval declaring that the proposed rural electric light and power project of the Lancaster County Rural Public Power District is feasible, conforming to public convenience and welfare. It was argued by re-

lator, however, that the certificate of approval lacks a finding that the systems and projects of the two districts for supplying electrical energy in the same territory will not be in material conflict. The statute does not require such a finding.

The duty of the state department, as imposed by provisions already quoted from the statute, was to make an investigation of the proposed district and of its proposed plants and systems and, if deemed feasible and conforming to public convenience and welfare, to execute, in duplicate, a certificate setting forth a true copy of the petition and declaring it approved. Comp. St. Supp. 1935, sec. 70-703. In this respect the record of organization shows compliance with the statute. The state department made the required investigation and issued certificates declaring that the proposed plants and systems of both districts were "feasible," conforming to public convenience and welfare, thus implying and deciding that overlapping will not create any material conflict within the meaning of the legislative act. As to this alleged defect, the certificates were sufficient for the purposes of the organization attacked by *quo warranto*. The record fails to show that the powers of the two districts cannot be so exercised as to prevent a material conflict. *Quo warranto* "is intended to prevent the exercise of powers that are not conferred by law, and is not ordinarily available to regulate the manner of exercising those powers." *State v. Drainage District,* 100 Neb. 625, 160 N. W. 997. On this phase of the case, therefore, relator is not entitled to a writ of ouster.

The organization or incorporation of the Lancaster County Rural Public Power District is also attacked as void on the ground that the state department's certificate of approval was not issued within 30 days from the receipt of the petition for incorporation, as required by law, 58 days having intervened. The act provides that the certificate of approval "shall" be executed within 30 days from the receipt of the petition. Comp. St. Supp. 1935, sec. 70-703. The position of relator is that "shall," in the connection

used, is a mandatory word and that the issuance of the certificate of approval within 30 days is jurisdictional. On the other hand, it is argued that "shall" is directory, when the duties imposed on the state department by the entire act are considered with legislative intent. The state department is charged with the imperative duty "to make an investigation of the proposed district and of its proposed plants, systems and irrigation works." Comp. St. Supp. 1935, sec. 70-703. Whether the proposed project is feasible, conforming to public convenience and welfare, is a determinable question directed to the state department. Comp. St. Supp. 1935, sec. 70-703. The investigation is judicial in its nature. It may require an intricate examination of technical engineering data and of plants and electrical systems. The examination of witnesses may be necessary. If the investigation required cannot be made in the orderly course of procedure within 30 days, the legislature did not mean to thus arbitrarily limit the time or to require an impossibility. Under the rule of reason, sufficient time for the performance of the official duties imposed, though more than 30 days, was intended, in view of all the circumstances. In this interpretation of the law "shall" was used in a directory sense, not mandatory. Decisions so holding are numerous and need not be cited. The delay in issuing the certificate of approval was not caused by neglect or other fault of the state department nor by the Lancaster County Rural Public Power District. The petition was filed July 20, 1935, and Ida Belle Betz objected to its allowance August 5, 1935, on the ground that the territory described therein was overlapped by the territory of the Eastern Nebraska Public Power District. There was a hearing on the objections August 13, 1935. August 16, 1935, supplemental objections of a similar import were interposed. August 19, 1935, the state department ordered a continuance to permit further consideration of the objections, to study the question as to overlapping and as to the feasibility of petitioner's plans. After an investigation requiring 58 days the certificate of approval was executed

September 18, 1935. On these facts jurisdiction to issue the certificate of approval was not lost by delay, since, under the circumstances, the 30-day provision for official action was not mandatory. It follows that a writ of ouster is denied and the action

DISMISSED.